**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**NATHAN BARNETT and
PHILLIP BARNETT,**

                        **Plaintiffs,**

**v.**                                                       **Case No.: 3:22-cv-00203**

**CABELL COUNTY COMMISSION, et al.,**

                        **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Compel Defendant Cabell County Commission. (ECF No. 64). Following a telephonic hearing on the motion on November 8, 2022, the Court requested that Plaintiffs specify the precise information and/or documents they sought from the Cabell County Commission ("the Commission"). (ECF No. 74). Plaintiffs filed a Reply in Further Support of the Motion to Compel, (ECF No. 75), in which they asked the Court to direct the Commission to answer Interrogatory Nos. 1 and 2 and withdrew the remainder of the Motion to Compel. The Commission filed a Surreply. (ECF No. 79). For the following reasons, this Court **GRANTS** the Plaintiffs' modified Motion to Compel.

In 2008, Plaintiffs were wrongfully convicted for the 2002 murder of a young woman. (ECF No. 1). Based on exonerating DNA evidence, their convictions were vacated in 2019. (*Id.*). Their lawsuit alleges, in part, that the Cabell County Prosecuting Attorney's Office ("CCPA") withheld exculpatory evidence during the prosecution, in violation of their constitutional rights described in *Brady v. Maryland,* 373 U.S. 83 (1963). (*Id.*).

1

Therefore, Plaintiffs requested the Commission to answer Interrogatory Nos. 1 and 2, concerning the CCPA's policies and training sessions on exculpatory evidence from 2000 through 2021.[1] (ECF No. 64-1 at 2–4). In its Response to the Motion to Compel, the Commission stated that it has no duty to produce the requested information concerning the CCPA's policies and training sessions because the Commission has no control over the CCPA and therefore lacks access to that information. (ECF No. 68). Although Plaintiffs could request this information directly from the CCPA—and in fact, they have done so— Plaintiffs argued during the telephonic hearing, that they have an interest in directly connecting the Commission to the CCPA policies and training sessions. Therefore, the central issue in this discovery dispute is whether the relationship between the Commission and the CCPA is sufficient to require the Commission to answer Plaintiffs' interrogatories.

In responding to interrogatories, a party must provide information that is "available" to the party. Fed. R. Civ. P. 33 (b)(1)(B). Whether information is "available" for Rule 33 purposes amounts to the same inquiry as whether that information is within the party's "possession, custody, or control" under Rule 34. *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 513 (4th Cir. 1977) ("[Rules 33 and 34] are equally inclusive in their scope. [...] 'Availability' and 'control' are both words of art and are used to express the same thought.") (internal quotation marks omitted). A party's discovery obligations may require it to obtain documents or information from third parties if the party has the legal right or ability to obtain that information. *Williams v. AT&T Mobility*, 2021 WL 1842713, at *2 (E.D.N.C., April 13, 2021). The party seeking production of documents or

---

[1] The relevant time frame was later limited by agreement of the parties to 2007-2010.

information has the burden to prove that the responding party has sufficient control over the documents or information. *See Ultra-Mek, Inc. v. Man Wah (USA), Inc.*, 318 F.R.D. 309, 313 (M.D.N.C. 2016).

The Commission argues that the information sought by Plaintiffs is not 'available' to it, because its relationship to the CCPA is merely one of fiscal oversight. The Commission maintains that it "exercises no control over the Prosecuting Attorney" and "has no control or relationship to the CCPA with regard to the prosecution of criminal matters." (ECF No. 68 at 2, 3). The Commission describes its relationship to the CCPA as "limited to funding and budgetary matters." (*Id.* at 4). According to the Commission, it and the CCPA are separate constitutional entities, and so it cannot provide the discovery sought by Plaintiffs. (*Id.* at 3).

There is no West Virginia precedent directly on point that analyzes the question posed by Plaintiffs' motion—whether one local government office may be required to respond to interrogatories regarding another local government office. The most similar case the undersigned could locate was *Bernhardt v. County of Los Angeles,* in which the plaintiff requested Los Angeles County to provide documents which belonged to the Los Angeles Sheriff's Department. *Bernhardt,* No. CV99-10121-GHK, 2008 WL 11470951, at *6 (C.D. Cal. Sept. 18, 2008). The County refused to provide the documents, arguing that the Sheriff's Department was a separate governmental body and that the documents were therefore not within the County's control. *Id.* The *Bernhardt* court accepted the County's argument without providing any analysis of the issue. *Id.* Because the *Bernhardt* court did not explain its reasoning, and because California and West Virginia have separate constitutions and county government structures, that decision provides no guidance in this case.

3

There are many cases discussing the question of availability/control of information between related corporate entities. In *Uniden America Corp. v. Ericsson Inc.*, the court listed a number of factors that may be considered in determining availability/control of information between corporations: "(a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement by the non-party corporation in the transaction, and (e) involvement of the non-party corporation in the litigation." *Uniden America Corp.,* 181 F.R.D. 302, 306 (M.D.N.C. 1998). The Commission argues that the standard applied to corporations cannot be applied to government agencies, citing *New York ex. rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259 (N.D.N.Y. 2006). This Court tends to agree that the corporate-subsidiary factors are not particularly useful in determining whether the Commission has access to information about the CCPA's policies and training sessions. But in examining the statutory provisions which empower county commissions in this state and court rulings interpreting those statutes, it seems that the Commission must have access to the information sought by Plaintiffs.

The undersigned concludes that the Commission is understating its constitutional authority, as well as the interdependence of the Commission and the CCPA. Although the authority of county commissions in West Virginia is limited to their enumerated powers, *State ex. rel. West Virginia Parkways Authority v. Barr*, 228 W. Va. 27, 32 (2011) (citing *Barbour v. Cnty. Court of Mercer Cnty.*, 85 W. Va. 359 (1920)), like Congress, those powers are nonetheless broad and central to governance. Foremost, county commissions are responsible for "the superintendence and administration of the internal police and fiscal affairs of their counties." W. Va. Const., Art. IX, § 11. The county commission

4

controls all county funds and provides the budgets for all other county offices, subject only to a few constitutional limitations. W. Va. Code § 7-7-7. The county commission owns and maintains all county buildings, including the prosecuting attorney's office. W. Va. Code § 7-3-2. While the county prosecutor is an elected official, the prosecutor may hire assistant prosecutors only with the "advice and consent" of the commission. W. Va. Code § 7-7-7. And "advice and consent" is not a guaranteed rubber stamp or a purely fiscal determination. There is precedent for a county commission denying employment of a particular individual based on their qualifications, implying that county commission have oversight authority that is not limited to fiscal matters. *See Webster Cnty. Comm'n v. Clayton*, 206 W. Va. 107 (1999) (upholding a county commission's denial of employment to a deputy sheriff). In describing the relationship between the county commission and another separate county office—the sheriff's office—the West Virginia Supreme Court of Appeals has written, "[i]t is the Commission who retains the ultimate responsibility for the compensation of these persons and the assurance of the orderly operation of the county government." *Id*; *see also Rankin v. Berkley Cnty. Sheriff's Dept.,* 222 F. Supp.2d 802, 807 (N.D.W. Va. 2002) (holding that the Sheriff's Office is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which the office is simply an agency) (quoting *Revene v. Charles County Commissioners,* 882 F.2d 870, 874 (4th Cir. 1989)).

Furthermore, the Supreme Court of Appeals has made clear that assistant prosecuting attorneys are considered joint employees of both the county prosecuting attorney and the county commission. *Id.* at 113 (citing *Fury v. Wood County Court*, 608 F. Supp. 198, 199 (S.D.W. Va. 1985)); *State ex rel. Morrisey v. W. Va. Office of Disciplinary Counsel*, 234 W. Va. 238, 250 (2014) (holding that "in the absence of a

statute indicating otherwise, a prosecutor's appointment of assistants under West Virginia Code § 7-7-8 ... and West Virginia Code § 7–7–7 ... is generally limited to that of appointing attorneys as employees of the prosecutor and county commission.") (markings omitted). The relationship between the county commission and the prosecuting attorney is not limited to buildings, budget, and assistant prosecuting attorneys, however. Indeed, the duties of the prosecuting attorney include advising, attending to, bringing, prosecuting, or defending all "matters, actions, suits, and proceedings" in which the *county or county board of education* is interested. *See* W. Va. Code § 7-4-1(a) (emphasis added).

In at least one decision in this district, the actions of the county prosecuting attorney were equated to the actions of the county itself. *Gardner v. Kanawha County, West Virginia,* No. 2:17-cv-3934, 2019 WL 4072712, at *18 (S.D.W. Va. Aug. 28, 2019). Thus, the Court found that the county commission could be held responsible for the actions of the county prosecutor under certain municipal theories of liability. When examining the relationship of the prosecutor to the State of West Virginia to determine the applicability of Eleventh Amendment immunity, the Court concluded that the prosecutor's substantial relationship with the county weighed against affording him sovereign immunity under the facts of that case. *Gardner v. Kanawha County, West Virginia,* No. 2:17-cv-3934, 2020 WL 4573824 (S.D.W. Va. Aug. 7, 2020). While the prosecuting attorney and county commission ultimately were dismissed in the *Gardner* case, the decision was not based upon the "separateness" of their existences. Accordingly, the potential liability to which the Commission is exposed arguably provides a basis of its own for the Commission to access the information requested by Plaintiffs.

6

The county commission also may be tasked with choosing a new prosecuting attorney or removing him from office for misconduct. If there is a vacancy in the office of prosecuting attorney or another elected office, the county commission is responsible for appointing a replacement of the same party. W. Va. Code § 3-10-8. If an elected official, including the prosecuting attorney, is suspected of misconduct, neglect, or incompetence, the county commission is one of three entities with the authority to file charges with the circuit court to remove that official. W. Va. Code § 6-6-7. Charges may be proffered by a resolution of the county commission, the county prosecuting attorney, or a petition by a requisite number of registered voters. *Id.* Therefore, where the prosecuting attorney is the official charged to be removed, the county commission is the only standing government body capable of bringing charges. In this respect, the county commission must have direct oversight over the prosecuting attorney's office; it must be sufficiently apprised of the prosecuting attorney's actions so it may bring charges when appropriate.[2] The county commission has also been described as "the central governing body of the county." *Webster Cnty. Comm'n,* 206 W. Va. at 113 (citing *State ex rel. Dingess v. Scaggs*, 156 W. Va. 588, 590 (1973)). While the undersigned can envision circumstances in which the CCPA could successfully prevent the Commission from obtaining access to certain confidential or privileged information, these statutes and court rulings all suggest that the Commission exercises sufficient control over the CCPA to have access to information about its policies and training sessions on exculpatory evidence.

The Commission stated in its surreply, "[t]he CCC has a duty to provide all

---

[2] If the Prosecuting Attorney has knowingly failed to disclose exculpatory evidence, that is official misconduct for which the Commission could bring charges against the Prosecuting Attorney for removal from office. Certainly, the Commission would have the right to access the CCPA's policies and training sessions regarding exculpatory evidence in order to investigate whether the Prosecuting Attorney is subject to removal proceedings for such misconduct.

information available to it, but no duty to search out new information." (ECF No. 79 at 2). This statement is somewhat misleading as to a party's duties in discovery, and is based on an overly constrained interpretation of a single case from the Western District of Wisconsin—the Commission cited *Trane Co. v. Klutznick*, 87 F.R.D. 473 (1980). In *Trane Co.*, the court stated, "[w]hile a party *may* not have a duty to search out new information, it is undisputed that a party has a duty to provide all information available to him." 87 F.R.D. at 476 (emphasis added). That quote is, at best, lukewarm support for the Commission's argument, and the decision continues by noting that "[i]nformation which is controlled by a party is available to him."[3] *Id.* The Commission's position simply runs counter to the general proposition that, in responding to discovery requests, a party has a duty to search the information available to it. *See Fisher v. Blue Ridge Group Homes*, No. 1:09cv282, 2010 WL 1568608, at *4 (W.D.N.C. Apr. 16, 2010) ("[P]laintiff has a duty to search for information so an answer can be given that is full and complete."); *U.S. ex rel. Englund v. Los Angeles County,* 235 F.R.D. 675, 680 (E.D. Cal. 2006) ("Generally, if the information sought is contained in the responding party's files and records, he or she is under a duty to search the records to provide the answers."); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006); *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 455 (E.D.N.C. 2005) ("If plaintiff does seek documents from the corporate defendants, the defendants have an obligation to search within their corporate structures[.]"). It is not clear what it would mean for the Commission to "search out new information"—the information that is available to the Commission already exists and is

---

[3] The *Trane Co.* court went on to find that the President of the United States had a duty to search records of the State and Treasury Departments in order to fully respond to interrogatories. 87 F.R.D. 473 (W.D. Wisc. 1980). The case therefore tends to support the proposition that the Commission may be responsible for providing information from other county offices.

already within its control, even if the Commission or its counsel aren't acutely aware of it. For a government entity sued in its official capacity, the duty to respond to interrogatories includes a duty to search records and speak with employees to find responsive information. *See A1 Procurement, LLC v. Thermocor, Inc.*, No. 2:15-cv-15, 2015 WL 13856283, at *2 (E.D. Va. July 27, 2015), citing *Gonzales v. City of Albuquerque*, No. CIV 09-0520 JB/RLP, 2010 WL 553308, at *8 (D.N.M. Feb. 9, 2010). Therefore, the Commission has a duty to conduct a reasonable investigation in order to respond to Plaintiffs' Interrogatory Nos. 1 and 2.

For the preceding reasons, the Court **GRANTS** Plaintiffs' Motion to Compel. Defendant Cabell County Commission is hereby **ORDERED** to provide full and complete responses to Interrogatory Nos. 1 and 2, as modified, within **ten days** of the date of this Order.

The Clerk is directed to provide a copy of this Order to counsel of record and any unrepresented parties.

**ENTERED:** December 13, 2022

Cheryl A. Eifert
United States Magistrate Judge