IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

NATHAN BARNETT and
PHILIP BARNETT,

       Plaintiffs,

v.            CIVIL ACTION NO. 3:22-0203

CABELL COUNTY COMMISSION; and
ANTHONY CUMMINGS,
GREG LOSH,
KIMBERLY PACK,
MIKE PARDE, and
EDDIE BLANKENSHIP,
in their official capacities,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

   Pending before the Court is Defendants Anthony Cummings, Greg Losh, Kimberly Pack, Mike Parde, and Eddie Blankenship's Partial Motion to Dismiss. ECF No. 14. For the following reasons, the Motion is **DENIED**, in part, and **GRANTED**, in part.

**I. BACKGROUND**

   As correctly characterized by the Defendants, Plaintiffs' Complaint is "very detailed, long, and factually complex." Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 1, ECF No. 15. This Memorandum Opinion and Order only summarizes the portions of the allegations relevant to the instant Partial Motion to Dismiss.

The claims brought by Plaintiffs Nathan and Philip Barnett stem from their conviction and eventual exoneration for the murder of Deanna Crawford. *See* Compl., ECF No. 1. On August 8, 2002, Ms. Crawford's body was found in Cabell County. *Id*. ¶¶ 39-40, 43. Approximately five years after the initial investigation into her murder, in January 2007, criminal informant Gregory Alan Bailey provided information to Cabell County Deputy Sheriff Jim Schiedler implicating Mr. Bailey's nephew, Brian Dement, and three friends in the murder. *Id*. ¶¶ 58-59, 61-62. Deputy Schiedler allegedly "passed along" this information to Defendant Anthony Cummings of the West Virginia State Police on January 11, 2007. *Id*. ¶ 65. In response, Defendant Officers Cummings and Eddie Blankenship interviewed Mr. Bailey the following day. *Id*. ¶ 66. The Complaint alleges that during this encounter Mr. Bailey informed these officers that Mr. Dement repeatedly confessed to killing Ms. Crawford with friends, that Defendants Cummings and Blankenship provided Mr. Bailey with non-public information concerning the murder, and that Defendants Cummings and Blankenship coerced Mr. Bailey into wearing a wire under threats of imprisonment. *Id*. ¶¶ 68-78.

Mr. Bailey proceeded to record two conversations with Mr. Dement concerning the murder. *Id*. ¶ 83. In one of these conversations, Mr. Dement named Justin Black alongside Plaintiffs Nathan and Philip Barnett as the other individuals involved in Ms. Crawford's murder. *Id*. ¶ 84. Upon obtaining these recordings, the State Police detained and interrogated Mr. Dement. *Id*. ¶ 91. Mr. Dement was allegedly interrogated for nine hours, while under the influence of alcohol and Xanax, during which police repeatedly threatened him until he falsely confessed to the murder. *Id*. ¶¶ 93-107. Mr. Dement provided the police with three inconsistent statements, each implicating Mr. Black and the Barnett brothers in incongruent narratives of the crime. *See id*. ¶¶ 113, 117, 119-26.

-2-

On January 29, 2007, Mr. Black became the next victim of an allegedly coercive police interrogation. *Id*. ¶¶ 131-32. According to the Complaint, this interrogation involved providing Mr. Black with "vivid details of the crime," a polygraph test, telling Mr. Black he had failed the polygraph and "berat[ing] him for being a liar," and threatening to revoke his parole until he confessed to the murder. *Id*. ¶¶ 136-44. The statement provided by Mr. Black was allegedly inconsistent with the statements provided by Mr. Dement. *See id*. ¶¶ 113, 117, 119-26, 150-52.

While Defendant Officers Greg Losh and Cummings interrogated Philip and Nathan Barnett concerning the murder on January 29, 2007, both maintained their innocence. *Id*. ¶¶ 156, 161-62, 167. While Mr. Dement recanted his confessions, then-Prosecuting Attorney Christopher G. Chiles[1] purportedly threatened Mr. Dement with a longer sentence unless he took a plea deal in which he agreed to testify against Mr. Black and the Barnett brothers. *Id*. ¶¶ 168-75. After taking this plea deal, Mr. Dement acknowledged to the Barnetts' investigator, Greg Cook, that the statements were fabricated due to police coercion, and stated: "We are all innocent." *Id*. ¶¶ 176-80. During the interview with Mr. Cook, the Complaint avers that Mr. Dement described his encounters with the police, stating that they "came to his house without his permission, put handcuffs on him, put guns to his head" and "interrogated him when he was intoxicated and messed up and got him thinking that all this stuff was true." *Id*. ¶¶ 178-79 (internal quotations and brackets omitted).

Mr. Black also recanted his confession. *Id*. ¶¶ 182-83. Plaintiffs assert that in response, Defendant Cummings "attempted to coerce [Mr.] Black into fabricating additional allegations

---

[1] The Honorable Christopher G. Chiles is now a judge on the Sixth Judicial Circuit Court of West Virginia.

against Philip and Nathan [Barnett], telling him that he would be given immunity from prosecution if he implicated [them] in the murder" but Mr. Black refused. *Id.* ¶¶ 185-86.

It appears undisputed that no physical evidence ever linked the Barnetts to the murder. *Id.* ¶ 191. In fact, the Complaint asserts that DNA evidence taken from cigarette butts found at the scene of the crime "conclusively excluded" all four men. *Id.* ¶¶ 188-89. The subsequent trials of Mr. Black and the Barnetts were therefore grounded almost[2] entirely in the confessions made by Mr. Dement and Mr. Black. *Id.* ¶¶ 192, 194, 200, 214-17. At the Barnetts trial, Mr. Dement reportedly disavowed his prior recantations, and provided a new, conflicting narrative of the events of Ms. Crawford's murder. *Id.* ¶¶ 241-44. The Barnetts' case was handled by Mr. Chiles and then-Assisting Prosecuting Attorney Jara L. Howard,[3] who allegedly falsely informed the Barnetts that "there is no known exculpatory evidence" when prompted in June 2007. *Id.* ¶¶ 201-02, 208-10. The allegedly suppressed information at this time included the fact that Mr. Bailey was a police informant. *Id.* ¶ 210.b.

Based on the above, the Barnetts were convicted of second-degree murder on August 27, 2008; Philip was sentenced to 40 years imprisonment and Nathan was sentenced to 36 years imprisonment. *Id.* ¶ 245. However, in 2010, the Supreme Court of Appeals of West Virginia vacated their convictions, based on the lower court's abuse of discretion in excluding evidence concerning the prior inconsistent statements of Mr. Dement to Mr. Cook. *Id.* ¶ 246; *see State v. Barnett*, 701 S.E.2d 460 (W. Va. 2010). Making the strategic decision to avoid a retrial, the Barnetts accepted *Kennedy* pleas[4] to voluntary manslaughter on January 18, 2011. Compl. ¶ 248.

---

[2] The Complaint details additional conflicting witness evidence proffered by the Government. *See id.* ¶¶ 219-43.

[3] The Honorable Jara L. Howard is now a judge on the Sixth Family Court Circuit of West Virginia.

[4] In West Virginia, a *Kennedy* plea allows a defendant to accept a plea deal while maintaining

Each man was sentenced to 15 years imprisonment. *Id.* ¶ 249. Philip Barnett took a second *Kennedy* plea to malicious wounding, resulting in an additional consecutive sentence of two to ten years. *Id.* ¶ 250.

The prosecution of the Barnetts has since been revealed as a miscarriage of justice. In August 2017, post-conviction DNA testing utilizing new technology definitively excluded Mr. Dement, Mr. Black, and the Barnetts from the DNA profile obtained from newly discovered semen found on Ms. Crawford's pants. *Id.* ¶¶ 251-57. However, the semen DNA profile matched that of the DNA initially found on the cigarette butts. *Id.* ¶ 258. The DNA profile was run through the Federal Bureau of Investigation's Combined DNA Index System, revealing a match to convicted sex offender Timothy Smith, who was incarcerated in Ohio. *Id.* ¶ 259.

At the time of Ms. Crawford's murder, Mr. Smith had been living in South Point, Ohio; furthermore, his ex-wife allegedly saw him covered in blood in the days leading up to the discovery of Ms. Crawford's body. *Id.* ¶¶ 260-61. The Complaint alleges that upon learning of the DNA results, Defendants Greg Losh and Mike Parde visited Mr. Smith in prison, "warning" him lawyers might visit, that "they had the right people," and that he should "keep his mouth shut." *Id.* ¶¶ 262-63.

On February 26, 2018, the Barnetts filed petitions to overturn their convictions. *Id.* ¶ 264. In May 2019, the Circuit Court vacated their *Kennedy* pleas based on the exonerating DNA evidence and granted them a new trial. *Id.* ¶ 267. On October 5, 2021, the State dismissed all charges against Mr. Black[5] and the Barnetts. *Id.* ¶ 268.

---

their innocence. *See Kennedy v. Frazier*, 357 S.E.2d 43 (W. Va. 1987).

[5] According to the Supreme Court of Appeals of West Virginia, Mr. Black was found guilty of second-degree murder on April 21, 2008. *State v. Black*, 708 S.E.2d 491, 497 (W. Va. 2010). According to the Complaint, his conviction occurred on July 2, 2008. Compl. ¶ 200. Regardless, Mr. Black was convicted and sentenced. The Complaint discusses Mr. Black's indictment, arrest,

The Complaint proceeds to describe the physical and psychological toll 18 years of combined wrongful incarceration exacted on the brothers. *See id.* ¶¶ 269-91. *Inter alia*, they allege that their incarceration for a sex crime marked them as targets for violence while in prison, caused Philip Barnett to develop a debilitating panic disorder, led Nathan Barnett to develop untreated and excruciating dental conditions, continues to give both men disturbing nightmares, has deeply strained Philip Barnett's relationship with his four adolescent children, and has had serious and lasting economic and reputational consequences for the brothers. *See id.*

On April 26, 2022, Philip and Nathan Barnett filed suit in this Court. The Barnetts' Complaint brings seven causes of action against five officers involved in their incarceration and the Cabell County Commission ("CCC"). *Id.* at 31-37. Five of the counts are brought against Defendants Anthony Cummings, Greg Losh, Kimberly Pack, Mike Parde, and Eddie Blankenship ("the Individual Defendants") as a group. One additional count is brought solely against Defendants Cummings and Parde (Count IV – Malicious Prosecution) and a final count is brought against CCC (Count VII – Suppression of *Brady/Giglio* Material). On July 15, 2022, the Individual Defendants filed a partial motion to dismiss Count III - Suppression of *Brady/Giglio* Material, Count V - Negligence, and Count VI – Intentional Infliction of Emotional Distress under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. ECF No. 14. The parties have timely filed a Response (ECF No. 36) and Reply. ECF No. 40. The Court heard argument on March 15, 2023, rending this matter ripe for adjudication.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of

---

conviction, some of his post-conviction efforts. Compl. ¶¶ 194, 197-200, 251-56.

the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the facts alleged in the complaint need not be probable, the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court accepts all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

### III. DISCUSSION

The Individual Defendants have motioned to dismiss Counts III, V, and VI of Plaintiffs' Complaint. Each count or challenge is brought pursuant to a disparate legal framework and will be addressed by the Court in succession.

### A. Count III – *Brady*/*Giglio* Violations

In Count III of their Complaint, Plaintiffs have asserted violations of their constitutional rights as enunciated in *Brady* and *Giglio*, stating that the Individual Defendants suppressed exculpatory and impeachment material concerning (1) "the coercive nature of the Individual Defendants' interrogations of Brian Dement and Justin Black" and (2) "the threats that Defendants Cummings and Blankenship used to persuade Greg Bailey to wear a wire and record his conversations with Brian Dement." Compl. ¶¶ 311-16. The Individual Defendants have motioned to dismiss these claims for failure to plausibly allege a *Brady*/*Giglio* violation,[6] arguing that Plaintiffs either knew or had the opportunity to obtain the information concerning Mr. Dement and Mr. Black, and that the information concerning Mr. Bailey was not material or favorable to Plaintiffs' defense. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 8-12. The Barnett brothers have disputed these contentions under a variety of theories. Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 7-15.

The Fifth and Fourteenth Amendments to the United States Constitution require the government to disclose exculpatory evidence to criminal defendants. *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). The prosecution's suppression of evidence that would tend to exculpate a defendant "violates due process where the evidence is material either to guilt or to punishment." *Id*. Likewise, "a police officer's failure to disclose exculpatory evidence to a prosecutor violates a defendant's due process rights." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (citing *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 847 (4th Cir. 1964)). The Fourth

---

[6] The Court notes that nothing in the Partial Motion to Dismiss expressly disputes the alleged violations under *Giglio*. *See* Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 8-12. The Motion relies solely upon *Brady*. *Id*. However, after careful consideration, the Court finds that the arguments invoked are either equally applicable to the *Giglio* claim or irrelevant in light of the Court's findings below.

Circuit has held that a *Brady* violation by a police officer occurs when "(1) the evidence at issue was favorable to [the defendant]; (2) the [o]fficers suppressed the evidence in bad faith; and (3) prejudice ensued." *Owens*, 767 F.3d at 396-97; *see also Smith v. Cain*, 565 U.S. 73, 75 (2012).

The Individual Defendants pinpoint different aspects of this standard which they argue are not plausibly alleged by Plaintiffs. With regards to the interrogations of Mr. Dement and Mr. Black, Defendants assert that the Complaint does not show that the information was suppressed, while with regards to the information concerning Mr. Bailey, Defendants assert that the Complaint does not show that the information was material.

### a. Allegations of *Brady* Violations Concerning Mr. Dement and Mr. Black

The Complaint alleges that the Individual Defendants used coercion in their interrogations of Mr. Dement and Mr. Black, and that the coercive nature of these interrogations was suppressed. Compl. ¶¶ 92-154, 312-13. In the instant motion, Defendants assert that Plaintiffs cannot have plausibly alleged suppression of the information concerning the interrogations of Mr. Dement and Mr. Black, as Plaintiffs either actually knew or could have reasonably obtained from other sources the relevant information at the time of their convictions. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 8-10. In support of this contention, the Individual Defendants cite to the Barnetts' appeal of their initial conviction, in which the Supreme Court of Appeals of West Virginia ordered a new trial based on a lower court's refusal to allow Mr. Dement to be cross-examined with prior inconsistent statements given to the Barnetts' investigator. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 8-10; *see State v. Barnett*, 701 S.E.2d 460 (W. Va. 2010). Defendants raise the same arguments as to the interrogation of Mr. Black and the testimony Mr. Black gave at his own trial concerning that interrogation. *Id*.; *see Black*, 708 S.E.2d 491. In Response, the Barnetts have argued that the issue of suppression is a factual matter, and therefore

must be accepted as true at the motion to dismiss stage, or, in the alternative, that the Complaint plausibly alleges that information concerning the interrogations of Mr. Dement and Mr. Black was suppressed. Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 7-11.

For the following reasons, the Court finds that Count III should be dismissed as to the allegedly suppressed information concerning the interrogations of Mr. Dement and Mr. Black.

**i.     The Court will consider whether the Complaint has plausibly alleged suppression of the coercive nature of the interrogations of Mr. Dement and Mr. Black.**

In their Response, Plaintiffs argue that alleging this suppression is sufficient to survive a motion to dismiss, as the issue of whether a piece of information was suppressed is a factual matter, properly left to a jury. Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 9. When considering a motion to dismiss, courts must accept all factual allegations in the complaint as true. *See Iqbal*, 556 U.S. at 678. However, courts should dismiss complaints which do not contain enough facts to state a claim to relief that is facially plausible. *Twombly*, 550 U.S. at 570. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiffs assert that "[c]ourts within the Fourth Circuit consistently deny motions to dismiss on *Brady* claims where such motions are premised upon factual issues about whether certain evidence was or was not disclosed." Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 9 (internal quotations and citations omitted). Yet, in the cases cited by Plaintiffs, the courts made clear that whether disclosure had occurred was a disputed factual matter. *See McPherson v. Balt. Police Dept.*, 494 F. Supp. 3d 269, 282 (D. Md. 2020) (denying 12(b)(6)

motion where defendants "raise[d] significant factual issues about whether certain evidence was or was not disclosed."); *Taylor v. Deaver*, No. 11 Civ. 341-H, 2012 WL 12905868, at *5 (E.D.N.C. Sept. 28, 2012) (dismissing factual objections regarding *Brady* disclosures in considering a 12(b)(6) motion). Here, Defendants' Motion is not disputing the factual basis of anything asserted in Plaintiffs' Complaint. Rather, they dispute that the facts alleged on the face of the Complaint plausibly support an allegation that suppression occurred.[7] *See* Defs.' Reply in Supp. of Partial Mot. to Dismiss at 4. Accordingly, the Court will consider whether the Complaint has plausibly asserted facts concerning the allegedly coercive interrogations of Mr. Dement and Mr. Black which could support an allegation of suppression.

    **ii.**    **Plaintiffs' Complaint indicates they had knowledge of the coercive nature of the interviews of Mr. Dement and Mr. Black at the time of their *Kennedy* pleas.**

The Individual Defendants assert that Plaintiffs had actual knowledge of the information they now allege was suppressed at the time of their *Kennedy* pleas, and that evidence of this actual knowledge is facially apparent in the Complaint. For the following reasons, the Court finds that the Barnetts knew of the coercive nature of Mr. Dement and Mr. Black's interrogations at the time they allege this information was suppressed.

However, as a preliminary matter, the Court finds that the Complaint's allegations of coercion are not the same as what was in the at-issue testimony of Mr. Dement in the Barnetts'

---

[7] The Court acknowledges that this is a charitable reading of Defendants' Partial Motion to Dismiss, which does directly state its challenge to the factual basis of the Complaint. *See* Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 8 ("That allegation, however, is wholly and demonstrably false."). Yet, invective aside, the challenges raised by Defendants are only to the ability of facts stated by Plaintiffs in the Complaint to support the alleged *Brady* violations. In other words, nothing raised by Defendants is outside of the factual universe of the Complaint; they do not, for example, argue that the Individual Defendants disclosed evidence of the coercive interviews to the Barnetts. Instead, Defendants argue the Complaint itself alleges facts amounting to disclosure.

2010 appeal to the Supreme Court of Appeals of West Virginia. *See Barnett*, 701 S.E.2d 460; Compl. ¶ 246 (discussing this appeal). In that case, Mr. Dement was found to have given multiple inconsistent statements concerning the events the night of Ms. Crawford's murder. *Barnett*, 701 S.E.2d at 465-66. Again, the Supreme Court found that Mr. Dement reportedly gave further inconsistent statements to the Barnetts' defense investigator, Mr. Cook. *Id.* at 464. Yet, at issue here is a subtly different aspect of Mr. Dement's role in the case—the nature of his interrogations by police officers.[8] *See* Compl. ¶ 313.a. It is entirely plausible that a government witness could provide multiple inconsistent statements—and admit to the falsity of those statements—without being subject to coercive interrogation techniques. Accordingly, the Court rejects Defendants' assertions that Plaintiffs had actual knowledge of the information they claim was suppressed concerning the interrogation of Mr. Dement via the arguments raised in the 2010 appeal.

However, the Individual Defendants point to a second source cited in the Complaint from which the Barnetts allegedly obtained the information concerning the coercive nature of Mr. Dement's interrogation: the interview with defense investigator Mr. Cook. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 9. This interview is integral to the 2010 appeal, as it contained the prior inconsistent statements made by Mr. Dement. *Barnett*, 701 S.E.2d at 464. Beyond prior inconsistent statements, however, the Complaint asserts that Mr. Dement provided Mr. Cook with information concerning the coercive nature of the police interrogations. Compl. ¶¶ 176-80. The

---

[8] Accordingly, the Court declines Defendants' invitation to find that "given the arguments Plaintiffs successfully presented to the West Virginia Supreme Court, Plaintiffs should be judicially estopped from presenting a new narrative in this civil action." Defs.' Reply in Supp. of Partial Mot. to Dismiss at 5 n.1. The arguments presented by Plaintiffs in *State v. Barnett* concerned cross-examination of Mr. Dement with prior inconsistent statements he made about the events of the night Ms. Crawford was supposedly killed. *See* 701 S.E.2d 460. The argument that Mr. Dement made a series of inconsistent statements is not at odds with Plaintiffs' current assertion that Mr. Dement's statements were coerced. *See* Compl. ¶¶ 92-131, 313.a.

Complaint alleges that Mr. Dement told Mr. Cook that the police "came to his house without his permission, put handcuffs on him, [and] put guns to his head," and that the Individual Defendants "interrogated him when he was intoxicated and mess up and got him thinking that all this stuff was true." *Id*. ¶¶ 178-79 (internal quotation marks omitted). According to the timeline of the Complaint, these statements to Mr. Cook took place prior to the Barnetts' trial and *Kennedy* pleas. *Id*. ¶¶ 173, 176 (alleging Mr. Cook spoke with Mr. Dement on October 25, 2007).

Accordingly, Plaintiffs have asserted that they had actual knowledge of at least some of the allegedly coercive conduct exhibited by the police in their interrogation of Mr. Dement. However, the Complaint may allege additional coercive conduct by Defendants in this interrogation. *See id*. ¶¶ 92-131. But the Court finds that, to whatever extent the Complaint could allege additional coercive conduct, that information was "available" to the Barnetts under the Fourth Circuit's *Brady* standard. The Fourth Circuit has held that "the *Brady* rule does not apply if the evidence in question is available to the defendant from other sources," including from interviews with government witnesses. *United States v. Wilson*, 901 F.2d 378, 380 (4th Cir. 1990) (internal citations omitted); *United States v. Blankenship*, 19 F.4th 685, 691-95 (4th Cir. 2021). *Blankenship* affirmed *Wilson*, finding that information known to a witness was not suppressed where "[a]t the very least, [the defendant] knew of the availability of this type of information and where to find it. Its location was surely where he would first look — indeed, probably did look." 19 F.4th at 693. Here, the Complaint asserts that the Barnetts sought information from Mr. Dement in 2007, and that Mr. Dement provided their investigator with some information concerning the coercive nature of the police interrogation at that point in time. Compl. ¶¶ 176-80. Therefore, the Court finds that any additional information Mr. Dement could have told Mr. Cook in 2007

concerning the coercive nature of the interrogation was "available" to the Barnetts under *Wilson* and *Blankenship*, and thus the Complaint fails to allege it was suppressed under *Brady*.

Additionally, the Court finds that Plaintiffs' Complaint shows that they either knew or reasonably should have known of the coercive nature of Mr. Black's interrogation at the time of their *Kennedy* pleas. Mr. Black's prosecution, conviction, and post-conviction efforts are all referenced in the Complaint. *Id*. ¶¶ 198-200, 251-54. The Court concludes that information given by Mr. Black in his trial and on appeal concerns the allegedly coercive nature of Mr. Black's interrogation. *See Black*, 708 S.E.2d 491. First, Mr. Black raised arguments concerning the coercive nature of the interrogation at the trial court, which held a suppression hearing concerning Mr. Black's confession on August 21, 2007. *Id*. at 499. Second, on appeal, Mr. Black asserted that the statement he made was "provided to the police as a result of the police feeding him details of the crime and threatening to revoke his parole if he refused to tell them what they wanted to hear." *Id*. at 497. This is a nearly identical narrative to what the Barnetts now claim was suppressed by the Individual Defendants. *See* Compl. ¶¶ 132-55 ("Defendant Park threatened [Mr.] Black using his parole status"). In his 2010 appeal, Mr. Black argued that his statements should not have been admitted into evidence because they were involuntary. *Black*, 208 S.E.2d at 498. The Supreme Court of Appeals of West Virginia's opinion discusses Mr. Black's assertion (and contrary assertions from state police) at length, finding that the trial court did not err in finding Mr. Black's confession to be voluntary. *Id*. at 500.

Accordingly, the Court finds that the Complaint does not plausibly allege that information concerning the coercive nature of the interrogation of Mr. Black was suppressed under *Brady*. Again, "the *Brady* rule does not apply if the evidence in question is available to the defendant from other sources," *Wilson*, 901 F.2d at 380 (quoting *United States v. Davis*, 787 F.2d 1501, 1505 (11th

-14-

Cir.), *cert. denied*, 479 U.S. 852 (1986)), and could have been obtained by the defendant through "reasonable and diligent investigation."[9] *Barnes v. Thompson*, 58 F.3d 971, 975 (4th Cir. 1995). Given that all three men were charged with crimes related to the murder of Ms. Crawford, and that information Mr. Black provided to the police was at issue in the Barnetts' trial, any reasonably diligent defense attorney would have been aware of Mr. Black's prosecution, testimony, and appeal concerning the coercive nature of his interrogation. By the time the Barnetts took their *Kennedy* pleas on January 18, 2011, Mr. Black had not only testified under oath that his confession was coerced, but also the Supreme Court of Appeals of West Virginia had issued an opinion declining to suppress Mr. Black's confession on those same grounds; it is implausible to allege that arguments repeatedly raised in a related case on the record were suppressed. This is especially true where, as here, the Complaint directly asserts information concerning the related case's progression through the judicial system. *See* Compl. ¶¶ 194, 197-200, 251-56. Therefore, the Court finds that the Barnetts' Complaint does not plausibly allege that this information was suppressed by the Individual Defendants in violation of *Brady* or *Giglio*.

### b. Alleged *Brady* Violations Concerning Mr. Bailey

Defendants further argue that Plaintiffs' *Brady* claim premised on information concerning alleged threats the officers made to Mr. Bailey fails as a matter of law, asserting that the

---

[9] "Moreover, the majority of federal circuits ... refuse to find a *Brady* violation where the defense can access the material through its own due diligence." *Blankenship v. United States*, Nos. 5:18-cv-00591 & 5:14-cr-00244, 2020 WL 247313, at *8 n.7 (S.D.W. Va. Jan. 25, 2020) *affirmed by* 19 F.4th 685 (4th Cir. 2021) (citing *State v. Mullen*, 171 Wash. 2d 881, 896 n.5, 259 P.3d 158 (2011); *Ellsworth v. Warden*, 333 F.3d 1, 6 (1st Cir. 2003); *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006); *United States v. Pelullo*, 399 F.3d 197, 213 (3d Cir. 2005); *United States v. Jeffers*, 570 F.3d 557, 573 (4th Cir. 2009); *Pondexter v. Quarterman*, 537 F.3d 511, 526 (5th Cir. 2008); *Owens v. Guida*, 549 F.3d 399, 415 (6th Cir. 2008); *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008); *Mandacina v. United States*, 328 F.3d 995, 1001-02 (8th Cir. 2003); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991); *Ward v. Hall*, 592 F.3d 1144, 1183 (11th Cir. 2010); *Xydas v. United States*, 445 F.2d 660, 668 (D.C. Cir. 1971)).

information at issue was neither material nor favorable to Plaintiffs' defense. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 10-12. The Court disagrees.

Evidence is "material" under *Brady* if there is a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding. *United States v. Bagley*, 473 U.S. 667, 682 (1965). A "reasonable probability" under *Bagley* is "a probability sufficient to undermine confidence in the outcome." *Id*. When evaluating the alleged materiality of suppressed evidence, courts must take into account its cumulative effect in light of other evidence, rather than assessing the probative value of each piece of evidence in a vacuum. *Kyles v. Whitley*, 514 U.S. 419, 421, 441 (1995); *United States v. Bartko*, 728 F.3d 327, 340 (4th Cir. 2013) ("Although courts of necessity examine undisclosed evidence item-by-item, their materiality determinations must evaluate the cumulative effect of all suppressed evidence to determine whether a *Brady* violation has occurred.") (quoting *United States v. Ellis*, 121 F.3d 908, 916 (4th Cir. 1997)). "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine [ ] confidence in the outcome of the trial.'" *Smith*, 565 U.S. at 75 (quoting *Kyles*, 514 U.S. at 434). The government is likewise obligated to disclose information that could be used to impeach government witnesses, especially where the witness's testimony is an important part of the government's case. *See Wearry v. Cain*, 577 U.S. 385, 392-94 (2016); *also Giglio*, 405 U.S. at 154-55; *Kyles*, 514 U.S. at 433 ("[T]he Court [has] disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes").

Here, the Court finds that Plaintiffs have plausibly alleged factual content to support that assertion that the information concerning Mr. Bailey is both material and favorable to them. The information about threats used by Defendants Cummings and Blankenship plausibly could have

been used by the defense in a variety of ways which could have engendered enough doubt to undermine a reasonable juror's confidence in the verdict. Most obviously, the Barnetts could have used the allegedly suppressed information to impeach Defendant Cummings's and Mr. Dement's testimony. The Complaint alleges that Mr. Bailey was given non-public information by the police, which he then passed on to Mr. Dement. Compl. ¶ 82. Had the Barnetts known this at trial, they could have used it to impeach Mr. Dement's testimony—a key aspect of the prosecution's case against them. Further, Plaintiffs assert that Defendant Cummings testified at the Barnetts' trial concerning his interactions with Mr. Bailey; it is entirely plausible information concerning coercion Defendant Cummings allegedly used against Mr. Bailey would have been used by the Barnetts to impeach Defendant Cummings. *See* Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 13-14. The Court must consider the cumulative effect of this impeachment evidence in determining whether the Complaint has plausibly alleged materiality under *Brady*. *See Bartko*, 728 F.3d at 340.

Moreover, the Barnetts plausibly could have employed the allegedly suppressed information to challenge the integrity of the police investigation against them more broadly. As Mr. Bailey's involvement with the police is alleged to be the foundation of the police's investigation of the Barnetts, a reasonable jury could have found that the manner in which Mr. Bailey provided the police with information cast doubt unto the validity of the investigation as a whole. *See Kyles*, 514 U.S. at 445 (finding evidence material where it "would have raised opportunities to attack . . . the thoroughness and even the good faith of the investigation"). A reasonable jury could believe that Mr. Bailey's coerced cooperation could have given him an incentive to make sure Mr. Dement incriminated the Barnetts. Accordingly, the allegedly suppressed information could "reasonably be taken to put the whole case in such a different light

-17-

as to undermine confidence in the verdict." *Campbell v. Polk*, 447 F.3d 270, 276 (4th Cir. 2006) (quoting *Kyles*, 514 U.S. at 435). The Court concludes that Complaint plausibly states the allegedly suppressed information concerning Mr. Bailey is material and favorable to the Barnetts, pursuant to *Brady* and *Kyles*.

Defendants make much of the fact that Mr. Bailey did not testify at the Barnetts' trial. *See* Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 12. But the Court agrees with Plaintiffs: "it is at least plausible . . . that [Mr.] Bailey did not testify at trial *because* the information concerning the true circumstances of his recording of [Mr.] Dement was suppressed." Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 13 (emphasis in original). In fact, the Court finds that the Barnetts have alleged suppression of information significantly analogous to that which the Supreme Court found to be material in *Kyles*. Taking all facts alleged as true, in both cases, a police informant provided information which initiated the investigation against the defendant. *See Kyles*, 514 U.S. at 424-27; Compl. ¶¶ 64, 67. The informant then did not testify at trial. *See Kyles*, 514 U.S. at 429-30; Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 12. However, the defense could have called the informant as an adverse witness had they known the suppressed information. *See Kyles*, 514 U.S. at 445; Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 13. Additionally, other witnesses at trial—including police officers—could have been impeached using the allegedly suppressed information concerning the informant. *See Kyles*, 514 U.S. at 446-47; Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 13-14. Finally, the Supreme Court found that the defendant in *Kyles* could have used the suppressed information concerning the informant's initial disclosures to the police to broadly undermine the state's case against him. *Kyles*, 514 U.S. at 445-49. The same allegedly holds true for the Barnetts.

Furthermore, Defendants' argument that information concerning the threats made to Mr. Bailey is immaterial due to its alleged inadmissibility is to no avail. *See* Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 9, 12. It is well-established that *Brady* material need not have been admissible, so long as it could lead to admissible evidence. *See Nicolas v. Att'y Gen. of Md.*, 820 F.3d 124, 130 n.4 (4th Cir. 2016) (citing *Kyles*, 514 U.S. at 428-32). Assuming arguendo that the Individual Defendants correctly conclude that the information would have been inadmissible, that analysis remains irrelevant to the Court's determination. Defendants have not motioned to dismiss the count on the grounds that the information could not plausibly have led to any admissible evidence, and the Court declines to consider this argument *sua sponte*.

Finally, the Individual Defendants argue that "by the time of their trial in August 2008, [] Plaintiffs were fully advised of the way in which they had come to be on the police's radar, including the method by which Mr. Bailey (as well as his wife) agreed to wear recording equipment." Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 12. Accordingly, Defendants assert, the threats officers are alleged to have made to Mr. Bailey were not suppressed. *See Wilson*, 901 F.2d at 380. Again, the Court disagrees. Unlike the information concerning the interrogations of Mr. Dement and Mr. Black—which the Complaint indicates was stated repeatedly on the record and provided to the Barnetts' private investigator—the Complaint does not allege that information concerning threats made to Mr. Bailey or Mr. Bailey's informant relationship was provided to the Barnetts at any point prior to their trial or pleas. Knowledge of how the Barnetts "had come to be on the police's radar" is not synonymous with knowledge that Defendants Cummings and Blankenship "threatened [Mr.] Bailey, telling him that, unless he agreed to wear a wire, [he] would face five years' jail time for being an 'accessory' to the murder."

*Compl.* ¶ 76. Therefore, the Court finds that the Complaint plausibly alleges a lack of knowledge commiserate with the suppression standard.

In summation, while a future jury might not concur with Plaintiffs' allegations that suppressed information concerning threats made to Mr. Bailey would have significantly undermined confidence in the prosecution's case against the Barnetts, they have plausibly brought these allegations to survive a motion to dismiss. The Partial Motion to Dismiss alleged *Brady* violations as to Mr. Bailey is **DENIED**. However, dismissal of the alleged *Brady* violations as to Mr. Black and Mr. Dement is **GRANTED**.

### B. Count V – State Negligence Claim

Count V alleges common law negligence against the Individual Defendants, citing their "duty to exercise reasonable care in the investigation of crimes, to reasonably pursue and disclose exculpatory evidence, and to refrain from fabricating evidence and pursuing criminal prosecutions without sufficient basis." *Compl.* ¶ 327. As the Court reads the pleadings concerning this count, it finds that Defendants raise two main contentions as to the grounds on which the Barnetts' negligence claim should be dismissed. First, they assert they are entitled to qualified or official immunity under state law, and second, they argue that the Complaint only alleges intentional conduct insufficient to support a claim of negligence. *See* Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 12-14; Defs.' Reply in Supp. of Partial Mot. to Dismiss at 7-10.

According to the West Virginia Supreme Court of Appeals,

[i]n the absence of an insurance contract waiving the defense, *the doctrine of qualified or official immunity bars a claim of mere negligence* against a state agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29-12A-1, et seq., and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

Syl. Pt. 6, *Clark v. Dunn*, 465 S.E.2d 374 (W. Va. 1995) (emphasis added); Syl. Pt. 7, *Jarvis v. W. Va. State Police*, 711 S.E.2d 542 (W. Va. 2010).

As the State Police are a State agency—not a subdivision—West Virginia Code § 29-12A-1, *et seq.* is inapplicable. *See Jarvis*, 711 S.E.2d at 551 n.10 (discussing the statutory provision but not applying it to the State Police). Accordingly, those provisions are equally inapplicable to the Individual Defendants as officials of the State Police. *See Ali v. Raleigh Cnty.*, 2018 WL 4101517, at *6 (S.D.W. Va. Aug. 28, 2018). In fact, the parties do not dispute that the Individual Defendants as officers of the West Virginia State Police can invoke qualified or official immunity. *See* Defs.' Mem. of Law in Supp of Partial Mot. to Dismiss at 12-14; Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 15-16; *also Jarvis*, 711 S.E.2d at 552 (applying state qualified or official immunity to West Virginia State Police officers). Nor is it disputed that the at-issue tortious conduct occurred within the scope of their employment and involved discretionary judgments, decisions, and functions. *See* Defs.' Mem. of Law in Supp of Partial Mot. to Dismiss at 12-14; Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 15-16.

The parties do potentially dispute, however, whether any insurance contract waived the defense of qualified or official immunity. *See* Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 15 (arguing that they should not have to prove the absence of an insurance waiver). While Defendants cite to a variety of cases which found that State insurance policies had not waived qualified or official immunity, they neglect to note that in most of these cases, a copy of the relevant insurance policy was provided to the court. *See, e.g., Hess v. W. Va. Div. of Corr.*, 705 S.E.2d 125, 130 (W. Va. 2010) ("In the instant case, the insurance policy at issue, a copy of which was attached to the Appellant's Motion to Dismiss, does not waive the Appellant's qualified immunity."). However, while the Court would prefer if Defendants had appended the relevant

insurance agreement, it finds that the West Virginia Supreme Court has found sufficient a mere lack of allegation of any insurance waiver. *See W. Va. State Police v. J.H.*, 856 S.E.2d 679, 696 (W. Va. 2021) (finding "no assertion of the existence of an insurance contract that waives the defense of qualified immunity" to be sufficient to meet the element). Plaintiffs dispute the burden they feel Defendants placed upon them to produce evidence of a waiver, but do not actually allege any such waiver exists. *See* Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 15. Accordingly, the Court concludes that there is no alleged relevant insurance policy which would waive the defense of qualified or official immunity, and that this lack of an allegation is sufficient under West Virginia law.

Subsequently, the parties debate whether the conduct complained of violated a clearly established statutory or constitutional right sufficient to overcome qualified immunity. The Supreme Court of Appeals of West Virginia has held that West Virginia—or its agencies, officials, or employees—is entitled to qualified immunity where the allegedly injurious conduct constitutes a discretionary governmental function unless "plaintiff has demonstrated that [the relevant] acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive." *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 766 (W. Va. 2014). While *AB* reaffirmed *Clark*'s holding that "mere negligence" was insufficient to overcome qualified or official immunity, the West Virginia Supreme Court of Appeals proceeded to apply the violation of "clearly established statutory or constitutional rights" standard to examine the tort of *negligent* training, supervision, and retention. *Compare* Syl. Pt. 6, *Clark*, 465 S.E.2d at 374 (concerning "mere negligence") *with A.B.*, 766 S.E.2d at 772 (concerning negligent training, supervision, and retention); *see also Sweat v. West Virginia*, 2016 WL 7422678, at *8 (Dec. 22, 2016). Accordingly,

it appears that a defendant could violate a plaintiff's constitutional or statutory rights via negligence in such a way as to overcome state qualified immunity. *See Maston v. Wagner*, 781 S.E.2d 936, 949, 955-56 (W. Va. 2015) (finding that both the State Police and a political subdivision could be held liable for allegedly negligent acts which violated the constitution such that qualified immunity did not apply).

Nonetheless, the Court finds that the Barnetts' plausible allegations of clearly established rights are insufficient to overcome state qualified or official immunity where their claim is one of "mere negligence," without converting that negligence claim into a claim of intentional tortious conduct. Again, to overcome qualified immunity, Plaintiffs must demonstrate that the Defendants' negligent behavior was "in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known" or "otherwise fraudulent, malicious, or oppressive." *A.B.*, 766 S.E.2d at 766. As a preliminary matter, the Court finds that the standard of "fraudulent, malicious, or oppressive" requires a finding of intentionality. *See Maston*, 781 S.E.2d at 949. *Maston* stated that where a defendant invokes qualified or official immunity "in the absence of fraudulent, malicious *or intentional* wrongdoing," the court should consider "(1) does the alleged conduct set out a constitutional or statutory violation, and (2) were the constitutional standards clearly established at the time in question." 781 S.E.2d at 949 (quoting *Hutchinson v. City of Huntington*, 479 S.E.2d 649, 659 (W. Va. 1996)). An allegation of a violation of constitutional rights by itself is insufficient—the Complaint must allege a causal connection between the constitutional rights violated and the Defendants' negligence. *See, e.g., J.H.*, 856 S.E.2d at 699 (finding an allegation of a constitutional violation insufficient where that violation was unconnected to negligent training and supervision claim).

-23-

Here, the Court finds that any "clearly established statutory or constitutional right" the Barnetts have alleged in support of Count V would require a finding of intentionality, thus bringing the claim outside the realm of negligence. Plaintiffs allege that Defendants violated "well-established rights by, among other things, failing to disclose exculpatory evidence and refraining from fabricating evidence, and pursuing criminal prosecutions without probable cause." Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 16; *see also* Compl. ¶ 327. Each of these would necessitate a finding of intentionality in order to violate a constitutional right. As mentioned above, proving a *Brady* violation against an officer requires a finding of that the officer "suppressed the evidence in bad faith." *Owens*, 767 F.3d at 397. Fabrication of evidence and malicious prosecution likewise entail intentional conduct. Finally, the Court cannot find any other alleged constitutional or statutory violation in the Complaint devoid of intentional conduct. Therefore, while the Barnetts have plausibly alleged constitutional violations, none of them support the negligence claim.

Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Count V.

## C. Count VI – Intentional Infliction of Emotional Distress ("IIED")

The Individual Defendants have motioned to dismiss Plaintiffs' IIED claim, arguing that the statute of limitations period had expired by the time the Complaint was filed. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 14-18. The Court will examine the Barnetts' IIED claim, the statute of limitations period, and any allegedly applicable exceptions to that limitations period.

The elements of IIED are:

(1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;

(2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;

(3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and,

(4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Lab'ys, Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998). In West Virginia, IIED has a statute of limitations of two years. Syl. Pt. 5, *Courtney v. Courtney*, 437 S.E.2d 436 (W. Va. 1993).

The Complaint plausibly alleges conduct sufficient to meet the IIED elements. First, it alleges that the Individual Defendants fabricated evidence, coerced false statements against Plaintiffs, and provided that coerced information to prosecutors while withholding exculpatory evidence—the Court finds that this alleged behavior is sufficiently plausibly extreme and outrageous to meet the IIED standard. *See* Compl. ¶¶ 331-33. Second, it alleges that this behavior was committed intentionally or recklessly, such that the actual and severe emotional distress of Plaintiffs was the substantially certain result. *Id*. ¶ 331, 334.

Defendants do not appear to dispute that the Complaint plausibly alleges IIED, only arguing that the claim is barred by the statute of limitations. *See* Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 14-18. Defendants contend that the variety of outrageous behaviors they allegedly committed predate the filing of the Complaint by over a decade. *Id*. at 15. The Partial Motion to Dismiss proceeds to preemptively dispute the applicability of the discovery rule, fraudulent concealment doctrine, or, generally, any other tolling doctrine. *Id*. at 16-17. In Response, Plaintiffs have argued that the Court should not consider this affirmative defense at the pleadings stage, or, in the alternative, that as the Barnetts' IIED claim would have been subject to the favorable termination bar prior to their exoneration, the statute of limitations should be deferred. Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 17-19.

"A court may grant a 12(b)(6) motion on statute of limitations grounds only if the time bar is apparent on the face of the complaint." *Semenova v. Md. Transit Administration*, 845 F.3d 564, 567 (4th Cir. 2017) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).

As a preliminary matter, the Court finds that none of the allegedly outrageous behavior occurred within two years prior to the filing date, and that this timeline is apparent on the face of the Complaint. While Plaintiffs are correct to assert that their Complaint alleges more outrageous conduct in support of IIED than the examples cherry-picked by the Individuals Defendants in their Partial Motion to Dismiss, the fact remains that none of the averred outrageous behavior occurred later than 2018. *See* Compl. ¶ 262. The latest potentially outrageous action the Court could find in the Complaint is the alleged February 2, 2018 visit of Defendants Losh and Parde to Mr. Smith in prison. *Id*.

However, Plaintiffs have argued that "the Barnetts continued wrongful imprisonment and subjection to criminal charges . . . is central to their IIED claim" and, therefore, the outrageous conduct continued until charges were dropped. Pls.' Mem. of Law in Opp'n to Defs.' Partial Mot. to Dismiss at 18. Even so, the Court is unconvinced that continued imprisonment is the outrageous behavior alleged in Count VI, which accuses the Individual Defendants of "fabricating evidence, coercing false statements" from Mr. Dement and Mr. Black, and "withholding exculpatory evidence." Compl. ¶ 331. The facts of the Complaint clearly state these actions occurred many years prior. *See id*. ¶¶ 92, 132, 194, 207, 213, 245. Rather, the count asserts that the Barnetts' imprisonment is the *result* of the outrageous behavior, stating: "The Individual Defendants' actions*, which resulted in Plaintiffs' incarceration for 18 years, collectively*, was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." *Id*. ¶ 333 (emphasis added). Under *Travis v. Alcon Laboratories*, Plaintiffs must prove both the outrageous actions and the substantially certain results of those actions in order to prevail on an IIED claim; the Court finds that the imprisonment of the Plaintiffs was an asserted result of the collective

allegedly intolerable actions of the Individual Defendants, rather than an asserted outrageous action undertaken by them as individuals. *See* 504 S.E.2d at 421.

And yet, assuming arguendo that the latest possible date of outrageous conduct is the date Plaintiffs' *Kennedy* pleas were vacated—in May 2019—that still predates the filing of the Complaint by more than two years. *See id*. ¶ 267. The only date in the Complaint's recitation of facts which would fall within the two-year statutory period is the October 5, 2021 dismissal of charges brought against the Barnetts. *Id*. ¶ 268. Plaintiffs have offered no allegations, evidence, or authority to support a finding that, post-release, the Individual Defendants continued to behave outrageously until charges were dropped. The Court does not seriously entertain the possibility that dismissal of the charges itself was outrageous. Accordingly, if Plaintiffs are to prevail, they must establish an exception to the general applicability of the statute of limitations.

To that end, Plaintiffs argue that they could not bring their IIED claim until the charges against them had been dismissed, as the claim otherwise would have been subject to the favorable termination doctrine. This doctrine prevents litigation of a tort claim which would constitute a "collateral attack on the [plaintiff's] conviction through the vehicle of a civil suit." *Goodwin v. City of Shepherdstown*, 825 S.E.2d 363, 369 (W. Va. 2019) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). Under *Heck v. Humphrey*, 42 U.S.C. § 1983 claims are not cognizable where those claims are challenging the legality of a conviction, and where a favorable adjudication would result in a prisoner's release. 512 U.S. at 488. Instead, *Heck* holds that the correct remedy to be sought is federal habeas corpus. *Id*. Where *Heck* would have barred a tort claim during the applicable statute of limitations but then a favorable termination occurred, any "cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. at 490; *see also Thompson v. Clark*, 142 S.

Ct. 1332 (2022) (discussing when a prosecution terminates favorably for the purposes of *Heck*). The Barnetts ask the Court to find that accrual of their IIED claim was deferred until the prosecution against them was dropped.

In opposition to this argument, the Individual Defendants note that under West Virginia law, there is no general tolling mechanism for claims brought by incarcerated individuals. *Craigo v. Marshall*, 331 S.E.2d 510, 513 (W. Va. 1985) ("[T]here is no tolling provision in our statute of limitations with regard to a prisoner's claim during the period of his incarceration. It is generally held absent specific provisions to the contrary in a tolling statute, there is no exemption because of imprisonment from a statute of limitations."). However, Plaintiffs are not asserting that the statute of limitations was tolled by their incarceration; they are asserting that the statute of limitations was deferred due to their inability to assert the IIED claim without running afoul of the favorable termination doctrine. The Supreme Court of Appeals of West Virginia has cited and applied *Heck* with approval in a case involving common law malicious prosecution, when discussing favorable termination doctrine. *See Goodwin*, 825 S.E.2d at 369.

To prevail on their IIED claim under West Virginia law, Plaintiffs must show that the Individual Defendants' outrageous conduct either intentionally or recklessly caused them unendurable emotional distress. *See Travis*, 504 S.E.2d at 421. The Barnetts claim that Defendants' outrageous conduct included withholding exculpatory evidence in violation of *Brady*.[10] Compl. ¶ 331. The Supreme Court has held that *Brady* claims are *Heck*-barred, as "a *Brady* claim, when successful postconviction, necessarily yields evidence undermining a conviction." *Skinner v.*

---

[10] Also, the Barnetts allege that Defendants, *inter alia*, fabricated evidence, coerced statements, physically assaulted them, and attempted to intimidate the likely actual culprit to prevent him from undermining their case against the Barnetts. *See, e.g.*, Compl. ¶¶ 73, 101, 138, 142, 166, 193, 208, 262.

*Switzer*, 562 U.S. 521, 536 (2011). Furthermore, relying on *Skinner*, the Fourth Circuit has found a § 1983 Fourth Amendment claim which relied upon a *Brady* claim to be *Heck*-barred. *Griffin v. Baltimore Police Dept.*, 804 F.3d 692, 695-96 (2015). Accordingly, the Court finds that an IIED claim relying upon a *Brady* claim as an element of its underlying conduct would also be barred by *Heck. See Goodwin*, 825 S.E.2d at 369. Accordingly, the Barnetts' IIED claim would have been subject to the favorable termination doctrine had they brought it during their period of incarceration.

Therefore, the Court finds today that Plaintiffs' IIED claim is subject to deferral accrual, and the two-year statute of limitations period began to run at the point of the October 5, 2021 dismissal of charges brought against the Barnetts. The Individual Defendants' Motion to Dismiss Count VI is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Individual Defendant's Partial Motion to Dismiss (ECF No. 14) is **GRANTED**, in part, and **DENIED**, in part. Count III is **DISMISSED** in part, as to the information concerning Mr. Dement and Mr. Black, but not as to the information concerning Mr. Bailey. The Motion is **GRANTED** as to Count V and **DENIED** as to Count VI.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        March 22, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE